[Crim. No. 1668.   Third Appellate District.—April 24, 1939.]

THE PEOPLE, Respondent, v. HENRY BENTON, Appellant.

Henry Benton, *in pro. per.*, for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

TUTTLE, J.—Appellant was convicted of the crime of robbery in the first degree, by a jury, and now appeals from the judgment of conviction and order denying a motion for new trial.

On September 19, 1938, appellant, his half-brother Ralph Benton, and one John Suttle, drove to the city of Modesto, in an automobile. They stopped near a Safeway store at approximately 4:30 o'clock in the afternoon, entered the store, and bought some coca cola. They stayed in the store from about twenty to twenty-five minutes, and then left the premises, entered their automobile, and drove around a few blocks. After an interval of several hours they again parked their automobile near the store. Defendant and John Suttle got out of the automobile. The latter returned to the store, and his testimony at the trial indicates just what he did: "I went up to the store and knocked on the door, and the clerk come to the door and asked me what I wanted, and I told him a coca cola. He opened the door and I went in and I got my coke, went over and drank a little of it, put a gun on him and took the money and marched him into the back room looking for the rest of it; I couldn't get it so I took him out back to the store and left." This happened at about 8 o'clock on the evening of the day mentioned. Defendant did not approach or enter the premises upon this occasion. Suttle then proceeded to where the automobile was parked, and he there met defendant. Both of them entered the automobile in which the third member of the trio, Ralph Benton, had been seated during all of the times mentioned. Before he left the store Suttle took with him over $100 in cash, which came from two cash registers, and was placed in a paper bag by the clerk in the store upon the demand of

Suttle. Taking the money with them, the three drove the automobile to the town of Tuolumne, and there divided the proceeds among them equally.

Upon being arraigned for trial, an attorney was appointed by the court to represent defendant, but this attorney thereafter withdrew upon defendant's request. The latter refused an offer of the court to appoint other counsel for him, and stated that he would act in his own behalf and represent himself at the trial. This was done, and the defendant now appears *in propria persona* upon this appeal.

Appellant opens his argument with the following language: "The case was miserably tried and conducted." An examination of the record fails to substantiate this observation. Although the defendant acted as his own counsel, it would appear that in this case, at least, the old adage that "he who acts as his own counsel has a fool for a client", is very definitely refuted. Defendant showed a surprising knowledge of legal trial tactics, and his statement of his grounds for various objections made, indicates considerable familiarity on his part with legal procedure.

■ There is one assignment of error in appellant's brief, and that is the insufficiency of the evidence to support the verdict. At the trial a rather unusual situation was presented. Suttle and Ralph Benton had already pleaded guilty to the charge of robbery, which the court found to be of the second degree. At the trial Ralph Benton appeared as a witness for the People, and Suttle appeared as a witness for the defendant. The chief contention of appellant seems to be that because he did not actually enter the store with Suttle, he could not be convicted of the crime. We are of the opinion that there is ample evidence in the record to sustain the conviction. "The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, shall hereafter be prosecuted, tried, and punished as principals, and no other facts need be alleged in any indictment or information against such an accessory than are required in an indictment or information against his principal." (Sec. 971, Pen. Code.) The clerk in the store at the time of the robbery identified

appellant and Suttle as two of the men who had visited the store earlier in the afternoon of the day mentioned. He also positively identified Suttle as the man who committed the robbery. Ralph Benton testified that he, appellant, and Suttle parked their automobile near the Safeway store just prior to the robbery, and that he stayed in the car; that his brother Henry (appellant) and John Suttle left the car; that before they left the car, Suttle had exhibited an automatic pistol; that his brother was the first to return to the car, and Suttle came later; that he saw a paper bag in Suttle's hand, and later learned that there was money in it; that he got a portion of the money, Suttle received a portion, and he did not recall whether or not appellant received any. He admitted, however, on cross-examination, that he recalled telling an officer that the money was divided equally between him, Suttle and appellant. He also admitted that he told the officers that the reason he came to Modesto was to hold up the store. Suttle took the witness stand on the part of the appellant and detailed, as we have stated, just how the robbery occurred. He stated that appellant did not have any part in the affair, and that the latter had never been to Modesto with him.

In connection with the cross-examination of witness Suttle, and by way of impeachment, the prosecution offered, and the court admitted in evidence, a statement made by Suttle and Ralph Benton in Sacramento before two officers of the police department. One of the officers testified (referring to appellant): "I handed him a statement that had been taken from Ralph Benton and John Suttle, and typed by Mr. Smith in longhand. I let him read it, and asked him if it was true. He said, 'Well, I guess it is.'" This statement details the commission of several crimes of like character by Ralph Benton, and Suttle on several occasions, and on one occasion, by Ralph Benton, appellant and Suttle. From this statement it appears without question that these three young men had been consistently engaged in a series of criminal escapades in and around the city of Sacramento. It is urged by appellant that the admission in evidence of this statement was erroneous and highly prejudicial to his case, and that were it not for such statement, he would never have been convicted. We are convinced that there is ample evidence in the record to sustain the conviction without the

necessity of resorting to the statement. Unquestionably, the statement could be used in connection with the cross-examination of Suttle, for the purpose of impeachment. There would be a grave question as to whether or not it would be evidence of any facts as against appellant, if there were not evidence in the record to the effect that appellant, after hearing the statement read to him, admitted that it was true. In any event, we are satisfied that the evidence of guilt is so clear and convincing that the conviction would have resulted even though the statement mentioned was never before the jury. If appellant was absolutely innocent of any participation in this crime, as he contends, it is rather strange that he did not appear as a witness in his own behalf, and explain, or attempt to explain the facts and circumstances which point so unerringly to his guilt. No doubt this course of action on his part was another factor which would reasonably lead the jury to believe that he and these other two young men were all equally guilty of the crime.

The record is free of prejudicial error, and there is ample evidence to support the verdict. It is therefore ordered that the order denying the motion for a new trial, and the judgment, be affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 9, 1939.