[Crim. No. 4074. Second Dist., Div. Three. July 30, 1947.]

THE PEOPLE, Respondent, v. ROBERT S. COOPER,
Appellant.

Harry M. Umann for Appellant.

Fred N. Howser, Attorney General, and John F. Hassler, Deputy Attorney General, for Respondent.

WOOD, J.—Defendant Robert S. Cooper, the appellant, and Guy Cooper and Warren Lodge were charged jointly in one count of an information with burglary and in a second count with grand theft. In a jury trial they were convicted on both counts, and the jury found that it was burglary of the second degree. Defendant Robert Cooper appeals from the judgment ''whereby the defendant was convicted of robbery of the first degree.'' It will be assumed that the appeal is from the judgments which were entered herein, that is, judgments of conviction of burglary and grand theft.

The evidence shows that four boxes of diamond rings, of a value of more than $200, were stolen from a display window of a jewelry store in Norwalk on April 16, 1946. The store faces south, is about 20 feet in width and 40 feet in depth. The entrance door is in the center of the front of the store, is recessed from the front line of the building about 3½ feet, and on each side of the entrance there is a display window, about 7 feet in length and 3½ feet in width, extending from the entrance to the wall. The rear of the display windows, inside the store, is in line with the front door of the store. At the rear of the display windows there are sliding doors, the bottoms of which are about 4 feet from the floor of the store. When the sliding doors are closed the display windows are entirely closed and the only way merchandise can be removed from the windows is through those doors. Showcases, about 35 feet in length and 3 feet in height, extend along the west side of the store from the west display window to the rear of the store, and the first opening between the showcases, through which a person can go behind the counter, is about 9 feet from the door. There is no opening between the showcase and the display window, and the top of the showcase extends about to the bottom of the sliding doors of

the west window. The sliding doors to that window can be opened either from the front or back of the showcase.

The owner of the store testified that on April 16, 1946, about 4:20 p.m., the three defendants entered his store, acting drunk and unruly and all talking at the same time, and at first they stood in a row in front of the showcase about 12 feet from the front door as he proceeded to wait on them; that appellant said he had been celebrating the birthday of Lodge's wife; that Lodge said he was looking for something for his wife—"almost anything"—and that he wanted earrings for her; that while he (witness) was showing them to him, Guy Cooper moved to the showcase in the front of the store next to the display window, and leaned over the showcase; that appellant moved back about 10 feet toward the east wall, opposite the witness and Lodge, and acted crazy, made faces, jigged around, and attracted the witness' attention; that suddenly Guy Cooper said he was going to the drug store to get a bromo seltzer, and then he left the store; that about 15 seconds after he left, the appellant said, "Where did he go?" and appellant then left the store; that Lodge, who had continued to look at merchandise the witness was showing him, then said suddenly, "I have got to have something nice," and "I will be back in a few minutes, and you see if you can find anything that is right"; that Lodge then left the store, and the witness then noticed that the sliding door of the display window (next to the front door and in front of the showcase) was open; that the sliding doors of the display windows are always kept closed; that he looked in the display window and it "didn't look right," because the jewelry display in the window is always so arranged that if any box of jewelry is removed it leaves a noticeable empty space; that when he returned to the store from lunch about 1:30 p.m. of that day he observed the window, and there were no empty spaces in it; that upon checking the merchandise after the defendants had left he found that four boxes of diamonds were missing.

Mr. Wire, a watchmaker in the store, testified that he saw the three defendants in the store about 4:30 p.m. on April 16, 1946; that he had seen appellant and Lodge in the store about two weeks previously and also about a month previously, and on those occasions he waited on them and they looked at earrings and other jewelry, but did not buy anything; that when the three defendants came in on April 16th, he was

sitting at his bench behind the counter in the rear part of the store with his back to them, and he glanced around, saw who they were, and then continued with his work, and watched them through a mirror on the wall; that the owner of the store proceeded to wait on Lodge, who said he wanted earrings; that at that time the defendants were together and they talked as if they had been drinking; that as the owner continued to wait on Lodge, appellant stepped back a little distance from Lodge, walking as if he were drunk, and trying to attract the owner's attention; that Guy Cooper moved to the showcase near the front door, leaned over the showcase and against the sliding door, and said there was nothing in the showcase which would interest them; that Guy Cooper then said he would go to the drug store and get a bromo seltzer, and he left the store; that about a minute thereafter appellant said, "Where did he go?" and then appellant left the store; that about two minutes thereafter Lodge said, "I will be back in a minute and see if we can find something," and then he left the store; that Guy Cooper was in the store about 5 minutes and the others about 8 minutes; that it was a warm day and appellant was wearing a heavy overcoat; that about 30 seconds after they had left he noticed the sliding door next to the front door was open about 6 inches; that he inspected the window and found that three boxes of rings were missing; that about 15 minutes before the defendants came in he waited on some customers, showing them some rings which he took from the display window, and that he placed the rings back in the window and at that time nothing was missing from the window display.

Another employee of the store testified that he put the jewelry in the display window the morning of April 16, 1946, and that on one pedestal in the window he placed four ring boxes each of which contained a diamond engagement ring and a wedding ring, and he also placed in the center of that pedestal two boxes of diamond earrings; that as he returned to the store about 1:30 p.m. he noticed that the display window was in the same condition it was in when he decorated it in the morning.

Another employee testified that he saw the three defendants in the store on April 16, 1946; that he had seen appellant and Lodge in the store on two prior occasions (the occasions referred to by witness Wire); that on April 16th the three defendants, while in the store separated and "were all over the front of the store."

An employee of a market, which is about half a block from the jewelry store, testified that in the afternoon of April 16, 1946, he saw three men who were "similar" in appearance to the defendants going together across the street, near the market, toward the jewelry store; that one of them was wearing an overcoat; that about 8 minutes later he saw two of those men run back across the street to a 1940 green Ford coupe, jump in it and drive away; that one of those two who ran back was wearing an overcoat.

Another employee of that market testified that in the afternoon of said April 16th he saw three men who resembled the defendants get out of an automobile in a parking lot, and then go up the street; that one of them was wearing an overcoat; that about 10 minutes later he saw two of them running back to the automobile, and at that time the other man was already in it, and they drove away; that one of the two who ran back was wearing an overcoat; that the automobile was a green Ford coupe with license number 15N370.

A brother of Lodge, called as a witness for plaintiff, testified that on April 16, 1946, he loaned his automobile, a 1940 green Ford coupe with license number 15N370, to defendant Lodge.

A deputy sheriff testified that he arrested the defendants on April 19, 1946, when they arrived in a 1940 green coupe at the place where the owner of the car, Lodge's brother, worked; that they also arrested a fourth man who was in the automobile with defendants, but he was not involved in the jewelry store affair; that in a conversation with all the defendants on that day, in the presence of Deputy Sheriff Freeman, he asked them if they had been in any of the stores at Norwalk recently, and they said they had not; that on the next day he and Officer Freeman had a conversation with each defendant out of the presence of the other defendants; that Guy Cooper said they had been to San Diego, but had not stopped in Norwalk, and that he might tell more if he were permitted to talk to his brother Robert; that appellant said they had gone to San Diego to visit a relative, that they had stopped somewhere, possibly Norwalk, and bought some food, but they had not gone into a jewelry store; that Lodge said they had gone to San Diego in his brother's car, but had not stopped in Norwalk. He testified further that in the separate conversations with Guy Cooper and appellant they had asked that the fourth man be released; that the officers told them,

in reply thereto, that they could not release him until they were satisfied he was not involved in the Norwalk case; that the officers told Lodge that the Coopers had asked for the release of the fourth man and that they could not release him until the three defendants proved to the officers that he was not involved in the Norwalk matter; that the three defendants then had a conversation in the corner of the room and returned to the officers, and Guy Cooper again requested that the fourth man be released, and said ''I was in the jewelry store in Norwalk but I didn't have anything to do with the theft,'' and ''Let the other two defendants admit that they were the ones that took the property because I am on probation''; that the officers said, ''You were in the store, weren't you?'' and he said ''Yes'' and ''the others were the ones that committed the theft''; that the other two defendants did not say anything at that time; that he asked the defendants where the jewelry was, and Lodge said it was where the officers could not find it; that each defendant said he could tell where the jewelry was; that he asked the defendants if they would plead guilty to theft, and Lodge and appellant said they would plead guilty to petty theft; that he told them petty theft was not involved and that the charges would be filed and it would be up to the court to decide the outcome of the case; that appellant and Lodge asked again if they could plead guilty to petty theft, and he told them they could not; that he asked them if they would take the officers to the jewelry, and they said they would not take them to it at that time; that two days later the defendants said they would not show them where the jewelry was, and that they were going to fight the case. It was stipulated that Officer Freeman would testify substantially the same as the other officer had testified.

Appellant testified that on the day in question the three defendants went to San Diego and on the way back he drove the car into a parking lot in Norwalk, then they went into a grocery store and then into the jewelry store, and Guy Cooper talked to the owner about a Navy bracelet for his nephew; that none of the defendants stole anything from the jewelry store; that he wore an overcoat on that day, but he did not believe he wore it in the store. Lodge testified that the three defendants were in the jewelry store on that day; that none of them stole anything from the jewelry store; that he never said anything to the owner of the store. Guy Cooper did not testify.

116

 Appellant asserts that he merely accompanied his brother Guy Cooper and Lodge, who entered the store to inquire about a Navy bracelet, and that the defendants may have had a mere opportunity to commit theft, in that they were in the store, but beyond that there was no evidence that appellant actually committed the offense. He argues that his contention is substantiated by the fact that the defendants were at all times in plain view of the prosecution's witnesses, the watchmaker and the owner, who testified that they did not see any of them take the jewelry. In other words, he argues that the defendants might have had an opportunity to steal the jewelry, but if those witnesses who testified that the defendants were in plain view, did not see any of them remove the jewelry, then a finding that they took advantage of their opportunity and stole the jewelry cannot be sustained. That argument assumes that those witnesses meant, by such testimony, that they observed the hands of the defendants so carefully at all times that, irrespective of how quick of hand the defendants might have been, no one of the defendants could have taken the jewelry without being observed doing so. Those witnesses did not say that the hands of the defendants were in view at all times. It is obvious that the left hand of Guy Cooper, as he leaned over the counter near the display window, could have been in such a position that it could not have been seen by the watchmaker or owner, who were to the right of him. An inference could reasonably have been drawn, under the circumstances here, that the left hand of Guy Cooper, as he leaned over the counter near the display window, was not within the view of those witnesses, and that at that time while his body obstructed the witnesses' view of his left hand he opened the sliding door with his left hand and took the jewelry. Of course, a showing of mere opportunity to commit a crime is not sufficient to justify a verdict of guilty. An opportunity to commit a crime, however, is a material circumstance to be considered in conjunction with other circumstances in determining whether the accused is guilty of the offense charged. (*People* v. *Robbins,* 171 Cal. 466, 470 [154 P. 317] ; *People* v. *Flores,* 58 Cal.App.2d 764, 770 [137 P.2d 767].)

 Another material circumstance was the flight of appellant from the jewelry store under conditions indicating consciousness of guilt. He wore an overcoat in the store, and the two employees of the nearby market saw two men who

resembled appellant and Lodge, one of whom was wearing an overcoat, run from the jewelry store, approximately at the time the theft was committed, to an automobile in which Guy Cooper was sitting in the driver's seat, and saw the automobile leave immediately when they entered it. ■ Immediate flight, even in the absence of any accusation, may afford persuasive evidence of consciousness of guilt. (*People* v. *Murguia*, 6 Cal.2d 190, 192 [57 P.2d 115] ; *People* v. *Waller*, 14 Cal.2d 693, 702 [96 P.2d 344].)

■ Another material circumstance was appellant's denial that he was in the jewelry store. At first he told the officers he had not been in the store and later he admitted he was there. ■ False and inconsistent statements indicate consciousness of guilt. (*People* v. *Cole*, 141 Cal. 88, 90 [74 P. 547].) ■ Another material circumstance was the knowledge of appellant as to the place where the stolen jewelry was. He offered to disclose the whereabouts of the jewelry, but later refused to give the information.

Other material evidence was the implied admission of guilt by appellant when he did not say anything at the time Guy Cooper said in his presence that appellant and Lodge were the ones who committed the theft. That accusatory statement was made under circumstances where the appellant was free to speak spontaneously, and where, if the accusation were false, it called for a reply by appellant. ■ Under such circumstances when an accused stands mute in the face of accusation, both the statement and the fact of the accused's failure to deny are admissible as indicative of a consciousness of guilt. (See *People* v. *Simmons*, 28 Cal.2d 699, 712 [172 P.2d 18].) All the defendants had requested the officers to release the fourth man who had been arrested with them, and the officers in reply thereto had told them it would be necessary for them to prove to the officers that he was not involved. After the officers had granted them permission to confer together concerning the request, and after they had conferred, Guy Cooper, who was then on probation, made the accusatory statement, and no reply was made.

■ Other material evidence was the implied admission of guilt of the charges herein when he offered to plead guilty to petty theft. In *People* v. *Carroll*, 92 Cal. 568 [28 P. 600], an officer testified that the defendants, who were arrested upon a charge of robbery, asked him if he would allow them to plead guilty to petty theft. On appeal therein it was con-

tended that the conversation with the officer was not admissible, upon the ground that the defendants were not acting voluntarily. The court held therein that the conversation was voluntary and was properly admitted. In *People* v. *Boyd*, 67 Cal.App. 292 [277 P. 783], the defendant was charged with grand theft and obtaining money under false pretenses. When that case was called for trial, after several continuances had been had, defendant therein offered to plead guilty to obtaining money under false pretenses if the case would be continued to another date. That case was tried, and evidence therein as to the offer to so plead was received over the objection of the defendant, and defendant was convicted of obtaining money under false pretenses. On appeal therein the District Court of Appeal held that such objection should have been sustained, but the Supreme Court in denying a petition for a hearing disapproved that part of the opinion and held that the trial court was right in overruling the objection and receiving the evidence as to the offer to plead guilty to one of the offenses charged. The Supreme Court said therein at pages 302 and 303: ''The action of the defendant in that regard was an admission on his part of the truth of the charge that he obtained money under false pretenses, which, with the other evidence, was properly left to the consideration of the jury. . . . Such admission was not, of course, conclusive evidence against the defendant. It was competent evidence merely, its weight and sufficiency being proper subjects for consideration by the jury. . . . The defendant's own admission, voluntarily made, was clearly competent evidence against him.''

The jury could reasonably infer from the evidence that the three defendants, in pursuance of a prearranged scheme among themselves to commit theft in the jewelry store, entered the store for the purpose of committing theft therein, and that the conduct of appellant and Lodge in the store was concerted action, in furtherance of the scheme, for the purpose of averting the attention of the owner and employees from Guy Cooper while he stole jewelry from the display window. The evidence was sufficient to support the findings of guilt on both counts, burglary and grand theft.

The judgments are affirmed.

Shinn, Acting P. J., and Kincaid, J. pro tem., concurred.