[Crim. No. 1045.   Fourth Dist.   Jan. 6, 1956.]

THE PEOPLE, Respondent, v. PATRICK O'KEEFE, Appellant.

Lercher & Ward and Max Lercher for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant and appellant Patrick O'Keefe and defendants O'Neil and Roberts were charged with the crime of robbery of one James Howe of a wrist watch and

$2.00 in cash by force and fear on March 25, 1955, in violation of section 211 of the Penal Code. Defendant O'Neil pleaded guilty. A jury trial resulted in a conviction of the appellant and defendant Roberts of robbery, second degree. Defendant O'Keefe appealed and alleged insufficiency of the evidence and failure of the court to instruct the jury on its own motion in reference to his claimed defense.

About 2:30 p.m. on the date charged the complaining witness Howe was in a public rest room in Pacific Beach washing his hands. Two men entered, beat him and took his watch and about $2.00 in cash. According to the witness the two men who held him up spoke to someone who was outside of the rest room, saying: "He hasn't got anything." After the robbery the complaining witness observed his two assailants drive away in a car in which two other men were seated. Three men were in the front seat and one was sitting in the rear seat. He took the license number and called the police. He positively identified O'Neil as one of the two who accosted him and identified one Palmer (depicted in a photograph) as the other.

Police officers testified that soon thereafter, about 6 p. m., they apprehended the occupants of the car, consisting of Roberts the driver, appellant O'Keefe, and O'Neil, all sitting in the front seat. They talked to them. In reply to questions Roberts said: "Talk to my lawyer," and appellant O'Keefe said he had arrived in San Diego the previous day and had spent the night in the car in front of Roberts' house and they had spent the day at the beach; that after appellant's arrest he said that he and O'Neil drove the car to San Diego from San Francisco and stopped in front of Roberts' house and stayed there that night; that on the 25th they all went to the beach; that they had been drinking quite a bit; that shortly before noon he became sick and went to the car; that O'Neil and Roberts got in it and drove around and he remembered Roberts stopping in front of the rest room, but he did not know what was going on. He identified Palmer from the photograph and said he thought he left for Colorado soon after this occasion.

One officer testified that in the conversation with Roberts, Roberts stated that this idea was "probably partly his"; that his sister had warned him to stay away from O'Neil and O'Keefe; that they drove up near the rest room on this occasion; that he got out and walked toward it and he saw O'Neil who was just coming out of it and O'Neil told him

about a "queer" being in there and that he was going to hit him; that the others in the car drove around; that upon their return he and O'Neil walked over to it and that Roberts drove away and O'Neil said "he had got a watch from the rest room"; that after one hour they drove to Roberts' home and O'Neil gave the watch to Roberts and he took it into the bedroom and put it in the dressing table drawer. An officer went to the Roberts home and found the watch which was identified by the complaining witness.

O'Neil testified at the trial for defendants and said that he drove Palmer and O'Keefe to the beach; that early in the afternoon appellant O'Keefe "passed out" in the back seat of the car from drink; that Roberts remained at the beach and was not present at the rest room; that Palmer followed Howe into the rest room and the complaining witness was pretty well beaten up when he (O'Neil) got in there; that they made him give up his watch and he later gave it to Roberts at his home and he and O'Neil split the money taken from the victim; that Palmer left them about 4 p. m. and he never thereafter saw him. He then testified he had known O'Keefe for about five years and came down with him from San Francisco in that car.

Appellant testified that he became intoxicated about noon that day and went to sleep in the car and did not know about any of the claimed happenings. He denied the conversation with the police officer. He admitted being seated in the front seat with O'Neil and Roberts when they were arrested. Defendant Roberts claimed he was not with the others at the public toilet but saw them when they came home and he said O'Neil gave him the watch to keep for him.

On rebuttal the complaining witness testified he did not enter the rest room with any person; that O'Neil was the one who struck him, and he recognized O'Neil because of his height and weight and a tattoo mark on his right arm. O'Neil admitted the presence of the tattoo mark as indicated.

█ The principal argument made by appellant is that the evidence was insufficient to show knowledge upon his part that the offense of robbery was being committed or that he aided and abetted in its commission.

The evidence demonstrates that appellant was admittedly present at the scene of the crime and the testimony of the complaining witness refutes appellant's story about "being passed out" in the rear seat of the car. Three of the defendants were seated in the front seat at the time, and when

apprehended appellant was found occupying this same position. The admissions of appellant to the officers show knowledge of the appellant that the car did stop at the rest room and of other events occurring that afternoon. He was a close friend of O'Neil, who admitted his guilt and his presence at the rest room. Roberts first admitted to the officers that appellant O'Keefe and O'Neil had driven around in the car and then went to the rest room. We conclude that the evidence, as related, was sufficient to support the finding of the jury that appellant was present and aided and abetted in the commission of the crime. Before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal on the ground of insufficiency of the evidence, it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].)

Next it is argued that the court, on its own motion, notwithstanding appellant's failure to offer such an instruction, should have instructed the jury that "If you find that the defendant O'Keefe, though present in the car at the time of the robbery, was passed out or asleep and knew nothing of the robbery, you should find him not guilty," citing such authorities as *People* v. *Putnam*, 20 Cal.2d 885, 890 [129 P.2d 367]; *People* v. *Warren*, 16 Cal.2d 103 [104 P.2d 1024]; and *Daniels* v. *City & County of San Francisco*, 40 Cal.2d 614, 623 [255 P.2d 785].

If appellant had offered such an instruction, and had the court refused it, a different question might be here presented. The effect of the suggested instruction would be only to require that the jury find that defendant had knowledge of the alleged robbery and aided and abetted in its commission.

We believe this phase of the claimed defense was sufficiently covered by other given instructions. The court, after defining the offense, instructed the jury that:

"All persons concerned in the commission of a crime who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission or, whether present or not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof.

"One who does not actively commit the offense, but who aids, promotes or encourages its commission either by act or

counsel or both, is not deemed by law to be guilty and shall not be found guilty of the crime unless he did what he did knowingly and with criminal intent. To abet another in the commission of a crime implies a consciousness of guilt in instigating, encouraging, promoting or aiding the commission of such criminal offense.'' (*People* v. *White,* 20 Cal.App. 156, 158 [128 P. 417] ; *People* v. *Miller,* 97 Cal.App. 179, 184 [275 P. 482] ; *People* v. *Mansour,* 103 Cal.App.2d 592, 598 [230 P.2d 52].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.