[Crim. No. 5539. Second Dist., Div. Two. May 16, 1956.]

THE PEOPLE, Respondent, v. RUBEL NOLL ARMENDARIZ et al., Appellants.

David C. Marcus and Gladys Towles Root for Appellants.

Edmund G. Brown, Attorney General, and Robert S. Rose, Deputy Attorney General, for Respondent.

MOORE, P. J.—The sufficiency of the evidence is the only question posed by this appeal.

Four men were accused by information of robbery, armed with deadly weapons. (Pen. Code, § 211.) Defendant Calderan was alleged to have suffered two prior felony convictions. Appellant Moreno had also been convicted previously twice, first for violating section 503 of the Vehicle Code and, second, violating section 11500, Health & Safety Code, both felonies. All parties were represented by counsel. All were convicted as charged, except Armendariz and Moreno were not personally armed. The fact is that the latter two were not present at the actual robbery, but became principals by virtue of having aided and abetted their codefendants in the commission of the robbery.

The trial court, at the hearing of the motion for a new trial and application for probation, struck the allegation of two prior convictions charged to Moreno. But judgments against both appellants were entered convicting them of robbery. Each appeals from the judgment. Moreno appeals from the order denying his motion for a new trial. █ Armendariz appeals from the sentence, but it is not appealable.

## THE FACTS

The victim of the bandits was one Clayton, operator of a liquor store on West Valley Boulevard in San Gabriel. On February 14, 1955, about 8 p. m. while there alone he observed defendants Calderan and Chavez enter the store at the same time, and don masks. Chavez held an automatic pistol in his hand, ordered Clayton to open the cash register and threatened to shoot the proprietor if he should refuse. When the latter could not obey, Calderan inserted his hand into a pigeonhole

under the cash register, withdrew a .32 special revolver, aimed it at Clayton and threatened to shoot unless the cash register be opened. Thereupon, Chavez ordered the merchant to go to the rear and lie down on the floor and thrice threatened to shoot the victim. The men took a metal box and a brown leather wallet containing checks and cash of the value of $429.47. With that box under his arm, Calderan emerged from the front door. Chavez, unable to make his exit through the rear door, started toward the front. Thereupon, Clayton took another revolver and effected the capture of Chavez. Contemporaneously with the arrest of the latter, as Calderan left the store, he was ordered by Officer Hatch to stop. As the bandit ran, Hatch fired and the bandit fired twice at Hatch. At the same time, Officer Cudahy of the radio car handcuffed Chavez. Calderan was subsequently arrested and duly convicted along with Chavez and appellants.

### As to Appellants

Inasmuch as appellants contend that there was not sufficient evidence to prove that they aided and abetted their codefendants, a close scrutiny of the evidence is essential to answer their claims. Prior to the events at Clayton's store, at 7 :15 p. m. February 14, 1955, Officers Hatch and Piotrowski of San Gabriel were sitting in the latter's automobile at Mission and San Gabriel Boulevards in the historic city. They observed a black sedan going south on San Gabriel driven by Armendariz, with Moreno by his side. The license number of the car was 1W5206 and was registered to Armendariz. Hatch knew both men. Their codefendants (Chavez and Calderan) sat in the rear seat. The officers trailed the slowly-moving car south on San Gabriel to Fairview, it made several turns until it reached Valley Boulevard at Del Mar. Thence it traveled west on Valley to Manley Drive, turned west and parked. There Calderan and Chavez left the black sedan and entered the liquor store of Clayton. Anticipating trouble, Piotrowski, at Hatch's suggestion, called for help which came at once. Hatch took a position some twenty feet from the store. It was almost 8 p. m. as Hatch saw the two brigands enter Clayton's store. While they were performing in the store as above recited, appellants were watched by Officer Piotrowski until the two shots were discharged by Calderan. Thereupon they drove away in a hurry. Some twenty minutes later Hatch and his associates were advised that Officer Durbin had two men in custody near the pool hall on south

Del Mar. Hatch searched the black sedan only to find a blue sweater and a man's wallet, colored black and brown, in the rear seat. Thereafter, Calderan told Hatch that the garment was his; that he had taken it off prior to going into the store, and left it in the sedan. At the same time he admitted that he had fired the two shots at Officer Hatch. When the latter arrived, Durbin held the black sedan and appellants.

When an interview was attempted by Lieutenant Nelson of San Gabriel, Moreno declined to talk. After Hatch narrated the events he had witnessed, Nelson asked whether Moreno cared to comment. His answer was, "no, I have nothing to say." To the same inquiry by the lieutenant, Armendariz said, "the whole thing was a lie."

That such evidence was sufficient to sustain the convictions of appellants for robbery is eloquently declared in *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778] ; *People* v. *Beal,* 108 Cal.App.2d 200, 204 [239 P.2d 84].) ██ A person who, with criminal knowledge, aids and abets the commission of a felony is a principal along with him who fires the fatal shot or breaks the door or bears away the loot of the theft. (*People* v. *Terman,* 4 Cal.App.2d 345, 347 [40 P.2d 915].) ██ Transporting robbers to the scene of their banditries is in aid thereof. These appellants not only conveyed Calderan and Chavez to the liquor store, but they remained in the sedan at a point nearby until they heard the two shots fired by Calderan. From those occurrences and the fact that Armendariz drove his own vehicle for some distance to deliver Chavez and Calderan to the locality of Clayton's liquor store; that he and Moreno waited nearby; that appellants drove away from the immediate vicinity; that they refused to talk when asked to comment on the officer's narrative of events—from such facts it was not a strained inference to deduce that appellants had knowingly and feloniously aided in the commission of the robbery. (*People* v. *Le Grant,* 76 Cal.App.2d 148, 153 [172 P.2d 554] ; *People* v. *Soffer,* 34 Cal.App.2d 301, 304 [93 P.2d 183] ; *People* v. *Benton,* 32 Cal.App.2d 407, 410 [89 P.2d 1089].) Whether appellants were present and whether they abetted the robbery are facts to be fairly found from all the evidence. (*People* v. *Sampsell,* 104 Cal.App. 431, 442 [286 P. 434].) Same were fairly determined by the court below. (*People* v. *Newland, supra*; *People* v. *O'Keefe,* 138 Cal.App.2d 329, 332, 333 [291 P.2d 982] ; *People* v. *Richardson,* 136 Cal.App.2d 342, 346 [288 P.2d 521].) Other facts support the inference,

namely: Officer Piotrowski saw the black sedan continuously until the two shots were fired; Armendariz testified they "took off" as soon as he "left Chavez off." Although Calderan admitted his complicity to Lieutenant Nelson, he testified to the contrary at the trial. ▇ Conflicting stories of an accused are evidence of guilt. (*People* v. *Roche*, 49 Cal.App.2d 459, 462 [121 P.2d 865]; *People* v. *Gibson*, 64 Cal.App.2d 537, 539 [149 P.2d 25]; *People* v. *Cooper*, 81 Cal.App.2d 110, 117 [183 P.2d 67]; *People* v. *Wayne*, 41 Cal.2d 814, 823 [264 P.2d 547].) ▇ The trial court having resolved all contradictory evidence against appellants, there is no reasonable basis for disturbing the judgment. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].)

Armendariz' purported appeal from the sentence is dismissed. Both judgments and the order denying Moreno's motion for a new trial are affirmed.

Fox, J., and Ashburn, J., concurred.