[Crim. No. 6788.  Second Dist., Div. One.  Aug. 8, 1960.]

THE PEOPLE, Respondent, v. HARVEY LEROY BAKER, Appellant.

Harvey Leroy Baker, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

WOOD, P. J.—In a trial by jury defendant Baker was convicted of first degree robbery. He appeals from the judgment and the order denying his motion for a new trial.

Appellant's contentions are to the effect that his counsel at the trial did not represent him properly and in good faith; the information was defective; the judge indicated prejudice against defendant in asking questions of prosecution witnesses; the court erred in rulings as to admissibility of evidence; the court erred in giving, and in failing to give, certain instructions; the deputy district attorney was guilty of misconduct.

On December 12, 1958, about 5:50 p. m. when Mr. Reed, a taxicab driver, was driving a cab out of a company garage in Los Angeles, two persons hailed him for a ride. One of the persons was the defendant and the other one was a man by the name of Lewis. They entered the cab—defendant sat in the rear seat, directly behind the driver, and Lewis sat in the front seat beside the driver. They said they wanted to go to Covina. While they were traveling, Lewis asked questions regarding the driver's family. The driver replied by stating that he had five children and that it was difficult to support them on his salary. The driver also talked about his church and the Bible. After the cab had gone about ten blocks, Lewis said: "[T]his is not the right man, I think we will let him go. He seems to be a pretty good fellow." Then Lewis told the driver to take them to 4th and Crocker Streets. When the cab arrived there, Lewis said that they had done the driver a favor, and they did not "want to hear anything more about this" or the cab expense or "what had happened tonight." They got out of the cab about 6 p. m.,—after having traveled about ten minutes. Lewis also said he would pay the fare when he got the money. While they were in the cab, the driver "glanced over in the back seat" and saw defendant Baker "placing a revolver back into his pocket."

Also on December 12, 1958, about 7:25 p. m., when Mr. White, a taxicab driver, was driving a cab near 6th and Crocker Streets, a man, the defendant Baker, hailed him for a ride. Baker opened the rear door, entered the cab, sat behind the driver, and said that he wanted to go to El Sereno. As the cab started to move, Baker said, "Wait, my buddy is coming." Then the cab was stopped, and Lewis opened the front door and sat beside the driver. The driver tried to adjust the rear-view mirror in order to see what Baker was doing as he sat in the corner of the cab back of the driver. Baker told the driver to turn onto Soto Street. While the driver was making that turn Baker placed a cold object against the back of the driver's head, and told him to take it

easy and keep driving "slow and easy." Lewis, who was in the front seat, said, "Where is the money?" Then he took a $5.00 bill and five $1.00 bills from the driver's pocket. After Baker asked where the driver's wallet was, the boy took the wallet from the driver's pocket and removed a $20 bill therefrom. Soon thereafter, Baker told the driver to stop the cab, get out of it, and go away. While the driver was getting out of the cab he saw a pistol in Baker's hand. Baker got into the front seat with Lewis, and drove the cab away. The driver went to a nearby house, telephoned the police, and reported the robbery. Soon thereafter, while the driver was in the police car making a report, a radio announcement was made that two suspects had been apprehended. When the police and the cab driver arrived at the place where other officers had the suspects in custody (which was about 15 minutes after the robbery), the suspects were standing near a police car. When the cab driver saw the two suspects he said that they were the persons who had robbed him. The officers searched them and took a $20 bill from Baker, and took a $5.00 bill and five $1.00 bills from Lewis. The suspects, who were apprehended in response to a police radio broadcast, ran in different directions when the arresting officers approached them. Before Lewis started to run, he dropped his overcoat. The officers found an unloaded gun in the coat. At the police station officers had a conversation with Lewis in the presence of Baker. In that conversation Lewis made statements to the effect that he and Baker committed the robbery. Then the officers told Baker that he was being accused of the robbery, and that Lewis had said that the gun (which was found in the coat) belonged to Baker. When confronted with those accusations, Baker did not say anything.

Each taxicab driver testified that defendant Baker was the man who was in the rear seat of the taxicab the driver was operating.

Baker did not testify.

Appellant asserts that his counsel did not represent him properly and in good faith. Some of appellant's specifications, with reference to such alleged representation, are in substance as follows: When appellant told his counsel that the information was defective (in that it did not apprise appellant of the facts necessary to constitute the crime charged) his counsel did not object to the information in "the way appellant told him to do." Although appellant had told his

counsel that $27.61 was the amount of money taken from him by the police and placed to his credit on the jail records, his counsel did not "subpoena the records" to prove that Officer Neustatter was "lying" when he testified that only $20 was taken from appellant. Although the transcript of the preliminary examination was in the possession of appellant's counsel, he did not use it to prove that White (cab driver) committed perjury when he testified at the trial that he saw appellant and the boy "at that spot" (standing on the sidewalk) when the officers had them. (According to appellant's brief, the preliminary transcript shows that White testified that appellant and the boy were standing in the street or that the officers were putting them into the car.) After two women (witnesses for appellant) had told appellant's counsel that White had made a statement to Reed (cab driver) which refuted testimony of White at the preliminary examination, appellant's counsel asked one of the women if "Reed" had made that statement, and she answered, "No"; and when appellant called his counsel's attention "to the mixup" of names (Reed instead of White), counsel for appellant said he "wanted her off the stand because she had hurt the case already." When appellant told his counsel that White admitted that he gave hearsay testimony, his counsel said he would use it for impeachment, but he never referred to it again. Appellant's counsel did not object when the deputy district attorney called defense witnesses liars. When a witness for the prosecution testified that appellant had said that he left "his home in Buena Park," the counsel for appellant could have proved that appellant "has never lived in Buena Park"—that the federal parole officer could have proved that testimony false because appellant had to register as an ex-convict and report his address to the parole officer.

Two photographs of appellant which were taken after the arrest, were placed in evidence by appellant's counsel, but he did not "elaborate" on them or give any indication why he introduced them. (According to appellant's brief, the photographs would show that he did not have a moustache or need a shave; whereas, White has testified that appellant had a moustache and needed a shave.)

It appears from the clerk's transcript that after the verdict was returned, the counsel for appellant informed the trial court that the appellant "wants a motion made to have his counsel withdraw." The motion was denied.

The asserted factual basis for the appellant's contention as to improper representation by his counsel is not

shown by the record on appeal. Even if it were assumed that such an asserted factual basis existed, the specifications of alleged improper representation are not sufficient to show that appellant was not properly represented. Counsel for appellant had the responsibility of representing the appellant and he, of course, was not required to accept appellant's opinion as to the legal sufficiency of the information, or as to the propriety of making objections or attempting to impeach witnesses. This contention of appellant does not merit a detailed discussion of his various specifications of alleged improper representation by counsel. A discussion of the specification regarding appellant's place of residence will be sufficient to indicate appellant's lack of understanding of proper legal representation. A police officer had testified that, in a conversation with appellant, the appellant said he "left his home in Buena Park at 5:00 a. m." on December 12. Appellant argues to the effect that since his counsel knew that he lived in Anaheim, his counsel should have proved by the testimony of a federal parole officer that appellant lived in Anaheim. It is to be noted that the police officer *said* that appellant *said* that he left his home in Buena Park. If it is a fact that appellant lived in Anaheim, that fact would not indicate in any way that appellant did not tell the police officer that he "left his home in Buena Park." Furthermore, if appellant's counsel had adopted the suggestion of appellant to the effect that a federal parole officer be called as a witness to testify that appellant had registered as an ex-convict and had reported his address as Anaheim, that testimony would not be proof that appellant did not tell the police officer that he "left his home in Buena Park"; and that testimony would have been detrimental to appellant in that it would have brought before the jury that appellant had been convicted of a felony. The record on appeal shows that appellant was ably represented by counsel at the trial.

Appellant asserts that the information was filed too late in that it was not filed within 15 days after the commitment, as required by section 739 of the Penal Code. That section provides: "When a defendant has been . . . committed . . . it shall be the duty of the district attorney . . . to file . . . within 15 days after the commitment, an information against the defendant. . . ." Appellant says that he was committed by a magistrate on December 16, 1958, as shown by a document attached to his brief and designated by him as Exhibit A. That document is a purported copy

of *the complaint,* dated December 16, 1958, which was filed in the municipal court. (It is not a copy of *the commitment.*) There is nothing in the record on appeal that establishes when defendant was committed. The information was filed January 7, 1959. This contention is not sustainable.

▮ Appellant asserts that the information is defective because "intent" to commit robbery was not alleged therein. The information alleged that defendant did feloniously and by means of force and fear take money from the person and possession of Quintus White. Such allegation implies that the intent of appellant was to steal. (See *People* v. *Johnson,* 57 Cal.App. 271, 273 [207 P. 257].) There is no merit to this contention.

▮ Appellant asserts that the information is defective because it does not allege that the robbery was committed by use of a weapon. Such an allegation was not necessary. (*People* v. *O'Neal,* 2 Cal.App.2d 551, 557 [38 P.2d 430]; see *People* v. *Kostal,* 159 Cal.App.2d 444, 450 [323 P.2d 1020].)

▮ Appellant asserts that the judge indicated prejudice against him. He argues that the judge, by asking questions of prosecution witnesses, acted as prosecutor and showed prejudice against appellant. An example of the questions, so referred to by appellant, is as follows: "The Court: What do you mean when you say a revolver? The Witness: I mean that it had six chambers to it. The Court: You mean as compared with an automatic? The Witness: Yes, sir. The Court: All right." It cannot properly be concluded that the judge indicated prejudice against appellant. No objection was made at the trial to questions asked by the judge. This contention is not sustainable.

▮ Appellant contends that the testimony of Mr. Reed (cab driver) should not have been received. His argument is that the testimony was inadmissible because it tended to show a crime that was not charged in the information. The testimony of Mr. Reed related to the first above-mentioned taxicab incident where appellant and a boy rode in the cab a few minutes and, after announcing that the driver was not the right man, left the cab without paying the fare; and during the ride the appellant had a gun. The evidence was admissible under the principle that evidence of similar acts, indicating a *modus operandi* or a characteristic plan, scheme, or behavior pattern, may be considered in determining the charge alleged. (See *People* v. *Mims,* 160 Cal.App.2d 589, 597 [325 P.2d 234].) ▮ Whether the facts pertaining to the asserted similar acts have sufficient common features with

the offense charged to warrant an inference that if the accused committed the asserted similar acts he committed the offense charged is a matter for the trial court to determine. (See *People* v. *Grimes,* 113 Cal.App.2d 365, 371 [248 P.2d 130].) The trial court did not err in receiving the testimony of Reed.

Appellant asserts that the court erred in receiving the testimony of Officer Neustatter regarding his conversation with Lewis, the boy who allegedly was with appellant during the taxicab rides. Appellant argues that the statements of the officer were hearsay and inadmissible. The statements of Lewis were in substance the same as the testimony of the cab drivers with reference to the acts of Lewis and appellant in connection with the taxicab rides. Officer Neustatter testified that the statements of Lewis were made in the presence of appellant, when Lewis and appellant were in the same room, and when Lewis was about three feet from appellant. As above stated, after the statements of Lewis were finished, the officer told appellant that he was being accused of the robbery, and that Lewis had said that the gun belonged to appellant. Officer Neustatter testified that appellant did not say anything when he was confronted with the accusatory statements. Under such circumstances, the testimony of the officer as to the statements of Lewis, and as to the conduct of appellant when confronted with those statements, was admissible. The failure of the appellant, under the circumstances, to deny the statements was indicative of consciousness of guilt. (See *People* v. *Cooper,* 81 Cal.App.2d 110, 117 [183 P.2d 67].)

Appellant asserts that the court erred in instructing the jury with reference to "intent." He argues that "intent" was not charged in the information and was not an issue in the trial. The original file in this case, which includes the instructions, has been forwarded to this court by the clerk of the superior court. It does not appear that the court gave an instruction with reference to intent. As above stated, however, intent was impliedly an issue in the case by reason of the allegation in the information that the money was taken by means of force and fear. This contention is not sustainable.

Appellant also asserts that the court erred in failing to give a "cautionary instruction" with reference to the alleged statement which Lewis made to the officer. Appellant argues that Officer Neustatter testified that the statement was made while Lewis was under the influence of alcohol. The

officer testified that he noticed there was an odor of alcohol on appellant's breath, but his speech was not blurred; and that appellant had been drinking and was somewhat under the influence of alcohol. A cautionary instruction was not requested by appellant, and the court was not required to give such an instruction. Lewis was not a witness, nor a party, herein. This contention is not sustainable.

Appellant asserts that the deputy district attorney was guilty of misconduct in that in his argument to the jury he made statements that were so prejudicial to appellant that he did not have a fair trial. Appellant states that the deputy, in making his argument, said: "Why would Mrs. Bull lie? Why would Mrs. Ferguson lie?" The persons referred to in those questions were witnesses who testified on behalf of appellant, and they were cousins of appellant. Appellant also states that the deputy, in making his argument, indicated to the jury that the relationship of those witnesses to appellant was the reason they would lie. Mrs. Bull testified that she is a cousin of appellant; she heard a conversation, in department 101 of the superior court, between Mr. White and Mr. Reed. She was asked: "Did you hear Mr. Reed state that he was not sure whether or not the defendant Baker was wearing glasses at the time of the offense or at the time he saw him?" She answered: "Mr. Reed did not make that statement." Mrs. Ferguson testified that she is a cousin of appellant; she heard a conversation, in department 101 of the superior court, between White and Reed. She was asked if she heard White say that he did not know whether or not the "defendants" were in possession of a gun. She answered, "Yes." Also she was asked if White said that the only means by which he could identify the defendants was by a black leather jacket. She answered, "Yes." An application by appellant for augmentation of the record, to include the instructions and the closing argument of the deputy district attorney, was denied by the trial court and this court. This court ordered that the file of the superior court be transmitted to this court for consideration of the instructions. In the application which was made to this court, the appellant represented that the deputy district attorney made the statements, regarding the veracity of appellant's cousins, as hereinabove recited. It will be assumed that the statements of the deputy were as stated by appellant. In *People* v. *Reznick*, 75 Cal.App.2d 832 [171 P.2d 952], it was said (p. 841) that the district attorney "may assail the credibility of appellant's witnesses and he

may condemn or excuse their actions." In *People* v. *Gonzales*, 151 Cal.App.2d 112 [311 P.2d 53], the defendant had called Jesse Hernandez as an alibi witness, and the district attorney, in making his argument before the jury, said: "How much then of the testimony of Jesse Hernandez can we believe? None," and "the testimony of Hernandez, that is absolutely false." In that case the court said (p. 116) : "This was comment upon the credibility of the witness well within the prosecutor's rights." In *People* v. *Mora*, 139 Cal.App.2d 266 [293 P.2d 522], it was said (p. 272) : "Objection is also made to the fact that in his closing argument the prosecuting attorney on several occasions referred to the stories told by appellants as 'lies' and characterized the appellants as 'liars.' " In that case the appellants had told different stories at different times.

In the present case it does not appear that the two witnesses (called for purposes of impeachment) had told different stories at different times, but the prosecutor was entitled to express his conclusion, as to their veracity, in the light of all the evidence in the case. Furthermore, in the present case it does not appear that appellant objected to the comments or asked for an admonition concerning them. The deputy district attorney was not guilty of misconduct.

Immediately after the verdict was returned appellant made a "motion for dismissal on the grounds that he was not tried by indictment of Grand Jury but rather on information." Thereupon the motion was denied. Appellant's notice of appeal states that "he is appealing the final Judgment and sentence, Motion to Dismiss Denial, and Denial of Motion for Retrial." Affirmance of the judgment carries with it affirmance of the sentence. (*People* v. *Perkins*, 147 Cal.App. 2d 793 [305 P.2d 932].) The order denying the motion to dismiss was not an order made after judgment, and is not appealable. (See Pen. Code, § 1237.)

The attempted appeal from the order denying the motion to dismiss is dismissed. The judgment and the order denying the motion for a new trial (retrial) are affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied August 25, 1960, and appellant's petition for a hearing by the Supreme Court was denied October 5, 1960.