[Crim. No. 1498. Fourth Dist. Jan. 29, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. RONALD J. SZCZECHOWICZ, Defendant and Appellant.

Crawford Bonter for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

SHEPARD, J.—This is an appeal from a judgment of conviction of two counts of armed robbery and from an order denying motion for new trial.

### FACTS

By an information filed January 17, 1961, appellant and Henry Leonard Wolfenden were charged with two counts of armed robbery and two counts of kidnapping committed against Robert E. Montoney and Vernita Montoney December 22, 1960, in San Diego County.

The facts shown by the record before us are substantially as follows: At about 1 o'clock p. m. on December 22, 1960, Robert E. Montoney and his wife, Vernita, while on a trip

to Tucson, Arizona, driving a red 1958 Chevrolet auto, were resting at Guatay rest camp in Cleveland National Forest in San Diego County. They went to sleep in their car. Appellant, in his 1954 turquoise blue Oldsmobile, with Wolfenden and Dolores Ann Dawson, stopped at the same place about a half hour or more later, a few feet from Montoney's car. Bobby Lee Barrett, Forest Service patrolman, saw and talked to the appellant's party at the rest camp and was told by them that they were from the Oldsmobile only and that some one else was asleep in the red Chevrolet. Barrett then left. At about 2 p. m. Montoney was awakened by Wolfenden with a 20-gauge sawed-off shotgun and forced to drive with his wife about 100-150 feet to the rest rooms. There, Montoney and his wife, under threat of the gun, were forced to lay their wallets and purse on the hood of their auto and go to the restrooms, about 20 feet away. Montoney's wallet contained three $20 bills. At the rest room Montoney turned and saw Wolfenden going at a fast walk to the road, carrying a purse and the shotgun. At the road Wolfenden was met by a turquoise blue car which drove up fast, stopped abruptly, picked up Wolfenden and "took off" fast. Montoney found the wallet and purse were gone and drove after the car in which Wolfenden left. He found a telephone and called the Highway Patrol. Officer Dart stopped the appellant's car near Flynn Springs. Appellant was driving with Wolfenden and Dawson as passengers. Officers Everett and Whalen then joined Dart.

With appellant's permission the officers searched the car. Officer Everett found the barrel of the shotgun under the front passenger seat. He asked appellant if he owned it. Appellant said he knew nothing about it. Asked where the rest of the gun was, he gave the same reply. Further search by Officer Dart revealed the stock and firing mechanism of the gun, loaded with 4 cartridges, hidden under the dash, over the radio. A caliber .351 rifle was in the car's trunk. None of appellant's party claimed ownership of the rifle at that time. A search revealed a $20 bill in appellant's wallet. Appellant said he brought this $20 bill with him from Anaheim. Later Dawson produced a $20 bill to the officers and another $20 bill was found hidden in her shoe. Shortly after the original arrest, appellant told the officers that Wolfenden had gone rabbit hunting with the shotgun while appellant and Dawson remained in the car. Barrett arrived and identified appellant's party as the persons he had seen at the rest camp. Shortly thereafter, the officers took appellant back over the

road to the scene of the robbery activity. Appellant told the officers Wolfenden started rabbit hunting; that after he and Dawson had waited a short time Wolfenden reappeared, running toward them on Highway 80, signalling, and that they picked him up. Some time later, on the same trip, appellant stated that when Wolfenden reappeared, he was carrying a billfold, a purse and the shotgun; that he handed a $20 bill to appellant. That as they proceeded west on Highway 80 Wolfenden threw out the purse and billfold, attempted to tear up his shirt and threw it out also. The officers found the shirt about 100 yards from the forestry station between Guatay rest camp and Flynn Springs, but did not find the billfold or purse.

Appellant on the witness stand told the story substantially as the officers ultimately pieced it out from repeated questioning of Wolfenden, Dawson and appellant. However, he added that before he was stopped by Officer Dart he was stopped by another officer, of the Highway Patrol; that appellant got out of the car, walked to the back with the officer and opened the trunk to allow the officer to look in the trunk; that the officer allowed him to proceed and he was stopped about two miles further on by the sheriff's deputies with the results already noted. He also stated that when he was first stopped by the sheriff's deputies, he walked with one of the deputies to a position in front of the sheriff's car, which was in front of the appellant's car, while Wolfenden and Dawson remained seated in appellant's car. Thus he was out of the hearing of Wolfenden. He claimed that the reason he did not tell either the first highway patrol officer or the deputy sheriff of the prior events was fear for the safety of Dawson. Appellant claims he knew nothing of Wolfenden's intentions prior to the robbery and that he is the innocent victim of circumstance. On trial, Wolfenden admitted his guilt but denied knowledge of the robbery by appellant.

### Sufficiency of Evidence

The appellant now contends that the evidence is insufficient as a matter of law to support the verdict and judgment of guilt. With this we cannot agree. ▮ As was said in *People* v. *Redrick*, 55 Cal.2d 282, 289 [4-5] [10 Cal.Rptr. 823, 359 P.2d 255], "The credence and ultimate weight to be given the evidence of the various particular circumstances are of course for the trier of fact, and 'It is the trier of fact, not the appellate court, that must be convinced of a defendant's guilt beyond a reasonable doubt. ▮ If the circum-

stances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' "

Under the circumstances here present, the basic facts as told by defendant from the witness stand were, standing alone, more than suspicious. He claims he never knew of the existence of the sawed-off shotgun until after the robbery. He was evidently familiar with guns for he owned the .351 caliber rifle and practiced with it. He was told by Barrett that he must not target practice within the close proximity of the rest camp because of danger to the people there. Yet he drove only 200 yards away from the camp, near a house, where Wolfenden received the keys from appellant, opened the trunk, removed what he wanted and departed toward the west—the direction of the rest camp. Appellant claims he was concerned about gasoline supply and also about time to get back to Santa Ana, Orange County. Four unlikely circumstances already appear. He must have known that target practice that close to habitation (either rest camp or house) was dangerous with a .351 rifle. He does not explain how the car keys got back to appellant after Wolfenden opened the trunk. Wolfenden must have returned them to appellant, for appellant later drove the car to the camp to pick up Wolfenden. It is unlikely that he would not have looked and had some parting word on where Wolfenden would go and where or when they would meet. This was the quiet of back country hills. Appellant says he and Dawson were later worried for fear some one had been shot. But no mention is made of a shot being fired. A shot from a .351 rifle and a sawed-off shotgun bear no resemblance to each other, but in such an area the report of either at a distance of 200 yards or less would make sufficient impact on the normal ear to create that type of memory likely to come forth in completely frank and open testimony. Appellant drove east from the camp for target shooting, yet he testified the area to the west was just as available and satisfactory for target shooting. He had known Wolfenden about three weeks and Dawson about three days. Yet he falsely told the officers repeatedly that Dawson was his wife. He testified he actually had no intention of marrying her. He admitted that on June 20, 1957, he had been convicted of attempted robbery.

Appellant testified that after the robbery, at the time he picked up Wolfenden, Wolfenden pointed the shotgun at him

and told him to get out of there; that they left with Wolfenden still holding the gun on appellant; that later Wolfenden gave appellant $20 and Dawson $40. Other evidence makes it clear that Wolfenden disassembled the gun, hiding the gun barrel under the seat and the breech and stock under the dash and over the radio, but appellant claims that he did not know where Wolfenden put them. There is no evidence that appellant was out of the driver's seat while the gun parts were being hidden. That objects as large as the barrel of the shotgun or its breech and stock could be hidden in the manner and places indicated without the driver's being conscious of what was going on stretches credulity.

Appellant testified that he and Dawson, within three or four minutes after they picked up Wolfenden at the rest camp, were aware or suspicious that Wolfenden had committed a robbery. Yet appellant had two distinct opportunities to tell the officers of the circumstances out of the presence of Wolfenden and many other such opportunities in Wolfenden's presence. Appellant knew at all these times that the shotgun was not then assembled and could not be fired. He knew the rifle was in the trunk out of the reach of Wolfenden. He knew the officers were fully capable of controlling Wolfenden. In the face of this, he claims he did not reveal his knowledge of the robbery because he feared for the safety of Dawson. He does not explain why, under the circumstances, Wolfenden would have wanted to harm her or how, under the circumstances, he could have harmed her. All of these matters may well have led the jury to believe that his explanations were wilfully false.

In addition, the testimony of the officers and Wolfenden was sufficient to build up such belief by the jury. Barrett's location of plaintiff's car when it first stopped at the rest camp was directly in front of and facing Montoney's car. Wolfenden said they stopped 20 or 30 feet from Montoney's car, a position from which it would be likely that the occupants of appellant's car would see Montoney and his wife asleep. Barrett's recital of a statement from appellant's group, all standing together, that someone was sleeping in Montoney's car, contradicted appellant's testimony that he saw no one in that car. Appellant told Officer Everett that Wolfenden had left the car with the shotgun to hunt rabbits. He testified he did not then know of the shotgun and that it was target practice. Appellant told Everett that after the robbery Wolfenden was carrying a purse and billfold. Appellant's testimony during

trial was materially different. When first questioned, appellant denied any knowledge of the shotgun. He testified during trial to seeing the shotgun disassembled before he was stopped by the officers. Appellant first told the officers he brought the $20 bill from Anaheim. Later he admitted Wolfenden gave him the $20 bill when Wolfenden entered the car after the robbery. Further detail appears unnecessary.

As was said in *People* v. *Osslo,* 50 Cal.2d 75, 93 [4] [323 P.2d 397], ''Such falsifications cogently evidence consciousness of guilt and suggest that there is no honest explanation for incriminating circumstances, and thus are admissions of guilt.''

See also *People* v. *Armendariz,* 141 Cal.App.2d 608, 612 [4] [297 P.2d 79] and authorities therein cited.

In the case here at bar the evidence showed without contradiction that a robbery occurred; that appellant drove the car which brought the man who wielded the gun to the scene and picked up the same man immediately after the robbery under circumstances that had the appearance of prearrangement. Appellant immediately received and retained part of the proceeds of the robbery. He admitted by his own testimony that he made materially false statements to the officers. The jury was warranted in believing that many of his other statements and material parts of his testimony were wilfully false. The evidence was ample to support the verdict and judgment. (*People* v. *Sorrentino,* 146 Cal.App.2d 149, 160 [11-13] [303 P.2d 859] ; *People* v. *Beaulieu,* 144 Cal.App. 2d 536, 540 [4-8] [301 P.2d 304] ; *People* v. *O'Keefe,* 138 Cal.App.2d 329, 331 [1] [291 P.2d 982] ; *People* v. *Miller,* 126 Cal.App. 162, 163 [1] [14 P.2d 342] ; *People* v. *Jaggers,* 120 Cal.App. 733, 734 [1] [8 P.2d 206].)

Kidnapping Acquittal

At the close of the trial the court advised a verdict of acquittal on the kidnapping charge. Appellant now claims, without citation of authority, that because the kidnapping charge was based on the same sequence of events, acquittal of kidnapping must result in acquittal of robbery. There is no merit in this contention. Penal Code section 954 provides that ''[a]n acquittal of one or more counts shall not be deemed an acquittal of any other count.'' It further provides that ''the prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading.'' (*People* v. *Grimes,* 173 Cal.App.2d 248, 251 [2] [343

P.2d 146] ; *People* v. *Smyre,* 164 Cal.App.2d 218, 222 [2] [330 P.2d 489] ; *People* v. *Goldstein,* 158 Cal.App.2d 86, 89 [3] [322 P.2d 253] ; *People* v. *Witzel,* 155 Cal.App.2d 486, 491 [3] [318 P.2d 136].)

The decision in *People* v. *Knowles,* 35 Cal.2d 175 [217 P.2d 1] in no way conflicts with the foregoing. As was explained in *People* v. *Smith,* 36 Cal.2d 444, 448 [4b] [224 P.2d 719], the decision in the *Knowles* case simply applied Penal Code section 654 to prevent double punishment for the same act. Here, the trial court disposed of that and appellant cannot complain.

Appellant makes no other claims of error.

The judgment and order denying motion for new trial are affirmed.

Griffin, P. J., and Coughlin, J., concurred.