[Crim. No. 3723.   Second Dist., Div. Two.   Oct. 4, 1943.]

THE PEOPLE, Respondent, v. NICK TORRILLO, Appellant.

Thomas Higgins, Jr., for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

McCOMB, J.—Defendant was convicted after trial by jury of (1) murder in the second degree, and (2) assault with a deadly weapon with intent to commit murder.

These are appeals from (a) the judgments, and (b) order denying his motion for a new trial.

Viewing the evidence in the light most favorable to the prosecution (*People* v. *Dukes,* 90 Cal.App. 657, 659 [266 P. 558]), the facts in the instant case are:

On July 30, 1920, about 12:25 a. m., Officer Purrier, Constable of Burbank Township, was en route to meet Officer Normand, Deputy Marshal and Night Patrolman of the City of Burbank, at the corner of San Fernando Road and Tujunga Avenue in Burbank. When at the intersection of Verdugo Road and Third Street, he saw a man, later identified as Mr. Gays, standing at the intersection. This man, he noticed ran toward a car parked on Angelino Street, which car, contained two other occupants subsequently identified as defendant and Mr. Dallo. After the two officers met, they observed that the rear door to a tire shop, located near the intersection of San Fernando Road and Third Street in Burbank, had been splintered giving evidence of an attempted burglary. Shortly thereafter, the same automobile that Officer Purrier had previously seen, the officers observed traveling without lights on Third Street near the tire shop above mentioned. This car, the officers stopped. In the back seat of the stopped auto-

mobile was seated Mr. Gays, while defendant and Mr. Dallo were in the front seat. Mr. Dallo was the driver. Officer Purrier asked the occupants of the stopped car, "What do you boys mean driving around town this time of night without any lights on this car?" Mr. Dallo replied, "We got lights." Defendant said, "Sure, we got lights." Officer Purrier then remarked, "Why aren't you using them?" Mr. Dallo said, "They're on." Officer Purrier said, "They are not on."

Officer Purrier then ordered the occupants of the car to put up their hands. After complying with the order, Mr. Dallo said that he had to put his hand down to turn on the lights. Upon permission being granted by Officer Purrier, Mr. Dallo put one hand down and switched on the lights and then immediately turned them off.

Thereafter Officer Purrier searched each of the occupants of the car but did not find any weapons upon them. Then both officers drew their guns. Officer Normand stated, "Here is the man I want right here." Whereupon he stepped upon the running board of the car with his left foot and put his right foot over the car's door into the back seat. As he did so he replaced his gun in its holster, drew his handcuffs and placed one of them on Mr. Gays' left wrist. As this occurred a shot was fired in the rear seat of the car. Officer Normand shrieked; exclaimed, "Oh, God!"; and fell into the back of the car. At the sound of the shot Officer Purrier turned his head, as he did so, Mr. Dallo fired two shots into the officer's body which caused him to stagger back about thirty feet against a small tree. When Officer Purrier staggered away from the car, defendant raised a nickel-plated revolver and all three occupants of the car started shooting at the officer. Two additional shots struck him. Officer Purrier endeavored to secure aid at a neighboring house, and failing to do so, returned to his car where he saw the three men, one of whom was defendant, raise the body of Officer Normand from the bottom of the car and throw it in the gutter. At the same time, he heard Mr. Gays say, "Let's go hunt that other son-of-a-bitch up and finish him off. We don't want any witnesses left to this." Mr. Dallo said, "No, let's get to hell out of here as fast as we can. The whole damn town will be here in a few minutes." Mr. Gays then got out of the automobile, searched the body of Officer Normand and took the latter's

gun from its holster. Defendant and Mr. Dallo started to drive away without Mr. Gays, who then ran toward Officer Purrier's car. As he did so Mr. Purrier shot and wounded him in the left leg. Mr. Gays then ran toward San Fernando Road. The car stopped at San Fernando Road and immediately thereafter proceeded to leave the vicinity of the crime.

Mr. Catlin, City Marshal of Burbank, who lived near the scene of the shooting, hearing the shots drove to the place where the crime had occurred, and found Officer Normand lying on the ground dead. On the following morning he found tire wrappings on San Fernando Road which had been taken from an automobile tire.

Defendant testified that Mr. Gays did the shooting, following which they drove to Los Angeles. Two days later defendant left Los Angeles for New York, without leaving a forwarding address, collecting wages due him, or paying his rent. He remained in New York three weeks and then went to St. Louis where he lived until the time of his arrest on December 19, 1942.

There are four questions presented for our determination which will be stated and answered hereunder seriatim.

First: *Was there substantial evidence to sustain the trial jury's implied finding that defendant participated in the killing of Officer Normand?*

This question must be answered in the affirmative, and is governed by the following pertinent rule of law:

Presence of a defendant at the commission of a felony by another is evidence to be considered, together with all of the circumstances immediately preceding, attending, and following the perpetration of the felony, as tending to show defendant's complicity in the crime. (*People* v. *Erno,* 195 Cal. 272, 278 [232 P. 710]; *People* v. *Yeager,* 194 Cal. 452, 460 [229 P. 40]; *People* v. *Woodward,* 45 Cal. 293, 294 [13 Am.Rep. 176]; *People* v. *Ho Kim You,* 24 Cal.App. 451, 462 [141 P. 950].)

Applying the foregoing rule to the facts in the present case, it is apparent that the jury was justified in drawing the inference that the killing of Officer Normand was the result of a preconceived plan of defendant and his companions to resist arrest, and if necessary to take human life in order to avoid being apprehended. The jury's inference was justified

by the undisputed evidence that defendant and his companions armed with revolvers were riding in an automobile after midnight, that one of their number apparently acted as a look-out and on perceiving Officer Purrier ran to the car in which his companions were seated; that when stopped under suspicious circumstances without provocation Mr. Gays killed Officer Normand; that after the fatal shots were fired, defendant and his companions rifled the body of the dying officer, pondered whether to pursue their nefarious scheme by trying to locate Officer Purrier and kill him, and then concluded to flee the scene of the crime; and that defendant promptly left the State of California without giving anyone his address, collecting wages due him, or paying his room rent.

█ Second: *Was there substantial evidence to sustain the jury's implied finding that Officer Normand met his death as the result of a criminal agency?*

This question must also be answered in the affirmative. Defendant testified that his companion, Mr. Gays, shot Officer Normand. The City Marshal of Burbank testified that shortly after the shots he found Officer Normand dead and there was blood upon his face and on the ground. The mortician who removed the dead officer's body testified that there was a bullet wound in the deceased's chest.

Clearly the foregoing evidence established the fact that the decedent came to his death as the result of being shot by Mr. Gays.

█ Third: *Was there substantial evidence to sustain the implied finding of the trial jury that defendant shot at Officer Purrier?*

This question must likewise be answered in the affirmative. Officer Purrier testified that as he staggered against a tree after having been wounded by Mr. Gays, defendant shot at him.

This testimony, if believed by the trial jury, was sufficient of itself to sustain the jury's implied finding that defendant committed an assault with a deadly weapon with intent to commit murder. There is no merit in defendant's contention that Officer Purrier's testimony was contradicted by other evidence. (See *People* v. *Pianezzi*, 42 Cal.App.2d 265, 269 [108 P.2d 732].)

Fourth: *Did the trial judge commit prejudicial error in permitting the prosecution to introduce evidence that (a) the*

*rear door of a tire shop near the scene of the crime was splintered, and that the following day wrappings from an automobile tire were found on San Fernando Road, and (b) Mr. Gays had been sent to prison?*

This question must be answered in the negative.

■ (a) The evidence relative to the condition of the tire shop's door was admissible as a circumstance indicating that a felony had been committed, and therefore the officers were justified in arresting any suspicious characters found in the vicinity.

The evidence relative to the tire wrappings found on San Fernando Road was inadmissible since it was irrelevant. However, such error was clearly nonprejudicial and must therefore be disregarded by us. (Art. VI, sec. 4½, Constitution of the State of California; *People* v. *Woods*, 147 Cal. 265, 271 [81 P. 652, 109 Am.St.Rep. 151].)

■ (b) After defendant testified that he had left Los Angeles because he was afraid Mr. Gays would kill him, the district attorney, on cross-examination, was permitted, over objection, to ask defendant if he had read that Mr. Gays had been sent to prison. In overruling the objection the trial judge said:

"The objection is overruled. Of course the fact that he was sent to prison, if it is true, is not any evidence the jury is to consider, but merely for testing the extent of the activities of the defendant, this defendant."

Clearly the question was a proper one as having a bearing upon defendant's consciousness of guilt while he remained out of the state for approximately twenty-two years after the commission of the felony. (See *People* v. *Yeager*, 194 Cal. 452, 486 [229 P. 40].)

For the foregoing reasons, the judgments and order are and each is affirmed.

Moore, P. J., and Wood (W. J.), J., concurred.