[Crim. No. 6263.   Second Dist., Div. Two.   Nov. 24, 1958.]

THE PEOPLE, Respondent, v. FRANKLIN MAURICE ELLENBERG et al., Defendants; JOE CARRIZOSA, Appellant.

Harrison M. Dunham for Appellant.

Edmund G. Brown, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

ASHBURN, J.—Joe Carrizosa, Franklin Maurice Ellenberg, Ronald James Wright and George Allen Glassey, were charged with robbery (Count I) and murder (Count II); after a nonjury trial Glassey was acquitted and the other defendants were convicted upon both counts. The court found as true a charge that Carrizosa had been formerly convicted of robbery. He was sentenced for the term prescribed by law upon the robbery charge and given a life sentence on the murder conviction, same to run concurrently with the robbery sentence. He appeals from the judgment.

Appellant makes but one point, insufficiency of the

evidence to support the conviction. There is no claim of error in admission of evidence or of inadequate corroboration of the testimony of accomplices. The argument is that the prosecution rested upon a claim of conspiracy to commit the robbery which resulted in the murder, and that there is no evidence that appellant ever entered into any such conspiracy. The proof shows that he is guilty as a principal, not only on the conspiracy basis but also as an aider and abettor and an accessory after the fact.

While Carrizosa and Wright were waiting in the alley for him, Ellenberg robbed the Aikin Grocery Store and in the process shot Mrs. Aikin, inflicting upon her injuries from which she shortly died. He ran out with gun in hand, Carrizosa told Wright to start the car, Ellenberg said "let's go" and·they drove to Wright's house. On the way a portion of the proceeds of the robbery was delivered to appellant and a three-way division was made in Wright's bathroom. The gun was hidden in Wright's garage and Carrizosa and Wright drove to the beach the next evening and threw the gun into the water.

The robbery occurred on Friday, August 23, 1957, shortly after 1 p. m. On the previous Tuesday or Wednesday Ellenberg, appellant and Glassey were talking about perpetrating a holdup. Ellenberg said he wanted someone with experience, "because I [Carrizosa] was busted before for armed robbery." Ellenberg had previously spotted the Aikin Grocery as the object of their proposed crime, had gone inside, bought cigarettes and observed the layout including a living room behind the store. He later had drawn a diagram of the same. He or Glassey said, in the conversation just mentioned, that there were two cash registers, that they cashed checks there and the money was kept in a box in a cabinet in the living room. Glassey displayed an automatic pistol, a .38 or .45. When they parted on that evening they had planned a robbery of the Aikin store for Friday morning.

Appellant took Friday off from work. Ellenberg was to pick him up but something happened to his car and appellant telephoned Wright to come for him. When the latter arrived Ellenberg was at appellant's home. The three drove to Glassey's house where Ellenberg's automatic had been resting on a clothes closet shelf for several days. The four of them, Wright, Ellenberg, Glassey and appellant, drove around the Aikin store about 10 a. m., Ellenberg telling the others he wanted to show them something. Glassey asked

where they were going and Ellenberg said "to this store," that he was planning to rob it. When they arrived he identified it for the others. Then they drove back to Glassey's home. There Ellenberg took his gun and the clip from the closet shelf, put them together and tucked the gun under his belt. Wright and Carrizosa had gone out to get some cokes. Soon they returned and appellant said "let's go." Glassey meantime had refused to participate; he was on probation and persisted in this refusal.

Ellenberg, Wright and appellant then got into Wright's car and drove to the Aikin store. They stopped in front, Ellenberg got out, wrapped a towel around his neck and face leaving only the eyes and upper portion of the face visible. In his hand was the gun which he cocked as he alighted. He told Wright and Carrizosa to wait for him in the alley. They drove around the corner and into the alley back of the store and there they awaited Ellenberg. He entered the front door, lined four customers against the wall facing it, demanded of the clerk all bills in the cash register and she gave same to him as he held the gun on her; then she also was put in the line against the wall. As Ronald Tipps, one of the customers, came into the store, Ellenberg grabbed him. The towel fell as far as his chin and Tipps saw his face and was able to identify Ellenberg at the trial. Ellenberg, immediately after receiving the contents of the cash register, entered the living room where Mrs. Virgie Aikin was lying on a couch. Mrs. Holland, the clerk, heard Ellenberg in the living room say, "where is the money?" and Mrs. Aikin reply, "what did you say?" Then there was the sound of a gunshot. Mrs. Aikin was shot in the abdomen and shortly died from the injuries so inflicted. Ellenberg came quickly into the grocery department, told the five customers there lined up to turn to the wall, not look back and so remain until he was gone.

While these things were going on four boys saw the Wright automobile standing in the alley and the two men in or near it, placing them in various positions. Two of the boys identified Carrizosa at the trial and three of them identified Wright.

Ellenberg came running out the front door of the grocery, around into the alley, with gun in hand and towel around his neck. Appellant saw him and told Wright to start the engine. Appellant moved from the front seat to the back, Ellenberg jumped into the one just vacated and Wright drove imme-

diately to his own home. On the way Ellenberg told them of the robbery and the shooting of the woman. He gave appellant part of the $70 and upon reaching Wright's home they went into the bathroom and divided the money three ways. Ellenberg told them to take the money because if one of them got caught "we'd all go to jail for it." Also, "that we were just as deep in it as he was." The gun was then hidden in Wright's garage.

Ellenberg was to come for it later and dispose of it. Something interfered and Carrizosa, having read of Mrs. Aikin's death, said he would get rid of the gun. He and Wright drove on Saturday evening to Belmont Shores where Carrizosa threw the gun into the water. Later the two of them took the police to the spot where they had disposed of the pistol but, although the area was dragged with magnets, it was not found. The towel was produced by Wright's sister and delivered to the police at the time of Wright's arrest in his home.

Ellenberg's explanation of the shooting of Mrs. Aikin was that she grabbed for the gun and it went off without his intentionally pulling the trigger. This is no defense, excuse or justification whatever. The robbery was partially consummated in the store room and was being continued in the living quarters. Intent to rob cannot be gainsaid and no effort has been made to do so. ▮ When such a felony results in the killing of another person the homicide is murder in the first degree by statutory definition (Pen. Code, § 189). Intent to kill is not of the essence. Accidental killing committed in the commission of a robbery has the same consequences as an intentional one. *People* v. *Coefield*, 37 Cal.2d 865, 868 [236 P.2d 570]; "Defendant argues that it must first be shown that there was a *murder*, not merely a killing, and that to have a murder there must be a malicious killing and an intent to kill. (See Pen. Code, § 187.) ▮ It has been held, however, that when one enters a place with a deadly weapon for the purpose of committing robbery, malice is shown by the nature of the attempted crime, and the law fixes upon the offender the intent which makes any killing in the perpetration of or attempt to perpetrate the robbery a murder of the first degree. [Citations.] Other cases have pointed out that such a killing is murder of the first degree by force of section 189 of the Penal Code, regardless of whether it was intentional or accidental. [Citations.] Here, as we have seen, the evidence, including defendant's own testimony, shows that

the killing was committed in connection with conduct intended to facilitate escape after the robbery and as part of one continuous transaction; accordingly, it constituted murder of the first degree by the terms of the statute. [Citations.] In such a case the jury has no option but to return a verdict of murder of the first degree, whether the killing was done intentionally or accidentally. [Citations.] It follows that it was not error to instruct the jury that the only criminal intent which the prosecution had to show was a specific intent to rob Tokus and that it was not required to prove a deliberate or premeditated killing or to prove any intent to kill. [Citations.]'' *People* v. *Morlock*, 46 Cal.2d 141, 146 [292 P.2d 897] : ''It is immaterial to the guilt of defendant that Annie Morales was the one killed rather than Piepa whom he intended to assault. We said in *People* v. *Coefield*, 37 Cal.2d 865, 868 [236 P.2d 570], that a killing is murder of the first degree by force of section 189 of the Penal Code, regardless of whether it was intentional or accidental. [Citations.]''

▪ The conspirator and the abettor stand in the same position in this regard—the killing is his act and his murder regardless of accident. As to an abettor, see *People* v. *Martin*, 12 Cal.2d 466, 472 [85 P.2d 880] ; *People* v. *Perkins*, 37 Cal.2d 62, 64 [230 P.2d 353] ; *People* v. *Miller*, 37 Cal.2d 801, 805 [236 P.2d 137] ; *People* v. *Silva*, 143 Cal.App.2d 162, 167, 169 [300 P.2d 25] ; *People* v. *Leon*, 129 Cal.App.2d 676, 679-680 [277 P.2d 481] ; *People* v. *Machado*, 150 Cal.App.2d 190, 194 [309 P.2d 903] ; *People* v. *Beaulieu*, 144 Cal.App.2d 536, 540 [301 P.2d 304] ; *People* v. *Torrillo*, 60 Cal.App.2d 755, 759 [141 P.2d 472] ; *People* v. *Benton*, 32 Cal.App.2d 407, 409 [89 P.2d 1089] ; *People* v. *Stevens*, 32 Cal.App.2d 666, 667 [90 P.2d 595]. As to a conspirator : 11 Cal.Jur.2d, § 8, p. 227 ; *People* v. *Harper*, 25 Cal.2d 862, 871 [156 P.2d 249] ; *People* v. *Williams*, 145 Cal.App.2d 163, 167 [302 P.2d 393] ; *People* v. *Sutton*, 17 Cal.App.2d 561, 567 [62 P.2d 397] ; Fricke on California Criminal Law (5th ed.), p. 107.

▪ Appellant did not testify nor did he call any witnesses in his behalf. Implicit in his counsel's argument, however, is the thought that the court was bound to accept certain protestations of innocence in the statement given by appellant to the arresting officers and introduced in evidence against him. Of course it was not under oath. Appellant's position in this behalf is manifestly unsound. His statements were disproved by other direct and circumstantial evidence. ▪ *People* v. *Acosta*, 45 Cal.2d 538, 542 [290 P.2d 1] : ''The courts

may sometimes say that the prosecution is 'bound by' extra-judicial statements of defendant which are introduced by the prosecution and which are irreconcilable with guilt, but this concept is applicable only where there is no other competent and substantial evidence which could establish guilt.''

Counsel relies upon such assertions of appellant as the following: ''Q. In other words, when you left the house that night you and Maurice and George and this other Ronnie were planning on pulling a robbery at this store, George knew about? A. Yes. Q. The following Friday morning, August 23rd at about seven o'clock? A. Yes, but I wasn't in it yet, you know.'' Also appellant's statement that when they started on the robbery trip Ellenberg said it wasn't going to go because George (Glassey) was not going and they would just drive by the store; that Ellenberg said he was going to get cokes when he got out of the car and told them to wait in the alley; that appellant did not know Ellenberg had a gun, although he had previously said in his statement that Glassey handed one to Ellenberg when they arrived at Glassey's house that morning; that he thought nothing was going to happen when he and Wright were waiting in the alley because there were a lot of kids around. The trial judge was not obligated to accept these protestations of innocence. The rest of appellant's statement to the police was sufficient in itself to prove him a conspirator, an aider and abettor and an accessory after the fact. The testimony given by Ellenberg, Wright and Glassey leaves little room for doubt of appellant's participation in planning the robbery and agreeing to go forward with it, his actual assistance in its perpetration and his help in escaping from the scene of the crime and disposing of the weapon after receiving his share of the spoils. ■ Construing the evidence according to the rule of *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778], we ''must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support'' the finding of guilt. ■ So doing, we find no reason to hesitate about affirming the judgment herein.

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.